In Re Select, 1022-1293, Mr. Andre. Good morning, Your Honors. Thank you. May it please the Court. In this appeal, the PTO's position is that a statutory adjustment under 154 in and by itself is an unjust term extension. They don't claim that the patentee did anything wrong. There's no gainsmanship. There's nothing. They just took the extension that was rightfully given to them under statute. And based on that patent term extension, the adjustment under 154, the patent law was invalidated for patents. Well, we still have the law of double patenting. Yes. And it's apparently conceded that these claims are not patently distinct from each other. We did not contest that below. So, there is a double patenting issue here. Well, from double patenting, there's two bases from double patenting. One is there's an unjust extension of time. And there's different ownership leading to potential gainsmanship. In this particular instance, you had to find there's an unjust extension of time. Well, those are reasons for the law. But the law is that if two patents are indistinct, patently indistinct, claims patently indistinct, one should not extend beyond the other. But if it's given to it by statute, in this particular instance, in order for the patent office to get to where it got to, it had to ignore the express natural reading of the statute. The statute doesn't talk about double patenting, right? And generally, we assume when there's no language which specifically changes earlier doctrine, that the patent statute doesn't change the doctrine. That's what the Supreme Court said in Helsin. And so, what you're saying is if you've got two patents that are patently indistinct, that were filed on the same day, one got a patent term adjustment, and the other one didn't, the term of the patent with the patent term adjustment is not to be limited to the term of the patent that issued more promptly, right? So, you could end up getting a patent which goes for more than 20 years from the filing date, even though there was no delay in the issuance of that patent, right? Well, the only way you get a patent term adjustment is if there is delays. Yeah, but in my hypothetical, there's no delay for patent one, which is patently indistinct from patent two. Both filed on the same date, but you're saying that the term of the second patent doesn't get restricted by the double patenting doctrine, right? Not by statute. But it would have before the statute was passed, right? In theory, yeah, before the statute was passed, yes. So, what indication is there that Congress, in enacting patent term adjustment, wanted to change the double patenting doctrine? Well, I think the actual language of the statute itself. The language of the statute is very clear. It says that the term shall be adjusted one day every day there's a delay. It says that, yes, but it doesn't deal with double patenting. Double patenting is part of the law, and if there were only one patent, PTA would certainly apply. But there are multiple patents here. There are multiple patents, and under the 154B1, it tells you how to do the adjustments. Then under B2, it gives you some limitations. And the limitations are very clear. And one of the limitations is, if there is a terminal disclaimer filed, then you cannot adjust it past that. So, in this particular case, what's happened is that the patent office is saying that an adjustment in itself, by statute, is unjust. No, it's not saying that. It's just saying that the double patenting doctrine, without regard to whether it's just or unjust, doesn't allow you to extend the patent term. But, as this court noted in Ezra, a judge-made doctrine should not cut short a statutory extension. That's always been true, isn't it? I mean, from the time in the 1870s when we had specific patent terms, double patenting has always restricted the term, right? Double patenting has always restricted the term, but, yeah, but it's not a statutory term, a statutory extension. The statute said you get a patent for so many years. And the Supreme Court in Miller and other cases said, no. The statute says you get one patent, not two patents. And so the term has to be restricted by the double patenting doctrine. This is regarding a statutory extension. So that's different. If you're doing some type of, back in the day, obviously, for your grade round, you could file these continuations, and you could get different filing dates and 17 years for issuance. You could play games with this. That was the very basis for the double patenting statute. Now, since that time period, I'm saying double patenting is still in play. But here, something's different in play. These are statutory extensions of time. So we're not talking about a situation whereby the normal term of a patent is at play here. We're talking about statutory extensions. Isn't the – seems to me that the real problem that you have to deal with here is that the claims in the two patents that we're talking about are apparently indistinct. So really, there's one patent here that covers just one invention. And 101, Section 101 says you can only have one invention. You can't have more than one patent on one invention. You can't have two patents on the same invention. But here we have exactly that because the claims, the patents, as you didn't dispute this, they're apparently indistinct. So when the claims expired on that one patent, then why don't we just simply say the claims expired on the other one? Because the patent office actually looked at that and said they were patented. Down below, the examiner did look at double patenting and decided it was not appropriate. There's no dispute. No one disputed that – it's undisputed that the patents are apparently indistinct. We did not raise that down below. We did raise below that was a material issue of new patentability because the examiner did look at double patenting. He did. At that point, I mean, you could have moved towards a terminal disclaimer. You could have taken another action in order to draw a distinctness between the patents. And I think that if we even have a slight variation between the two patents, then we get to these other arguments. I'm having a hard time just getting past the initial argument that there can only be one patent per invention. And here there's two patents per invention. And it seems to me that by law, operational law, that if the patent expires at this day, then you can't have the other patent continue on. I mean, that flies in the face of the very most basic legal notion of patent law. Yeah, I appreciate that point. In this particular instance, during original examination, there are continuations filed. And those continuations are different inventions, different aspects of the invention. That's presumed. That's how continuation practice works. But you're not arguing. You agree that they're patentably indistinct. So we don't have to worry about a situation where they are distinct. What we argued down below was that the examiner looked at this issue, determined they were patently distinct, did not require restriction requirements, did not require terminal disclaimer, and therefore there's not new issues of fact. So what? What difference does it make? Now we're in a different situation. They're patentably indistinct. Well, for the obvious determination, you're saying one is not patently distinct from the other is the argument. What we argued was that was already looked at and it did not raise to the level of the other. I don't understand what you're saying. I thought this case came to us with a concession assumption that the two were patentably indistinct. Well, we said we did not raise it down below. We did raise that there was a new material issue of fact down below with the examiner. The examiner did look at this issue. The point of this appeal really comes down to whether a statutory extension or adjustment is in and by itself enough to invalidate patents. That's the only thing that has been done here. Your best argument is that the statutory extension overrides judge-made double patent law. Absolutely. But as Judge Dyke pointed out earlier, double patenting law is a long-term part of the law. When Congress enacted PTA, it knew full well what the law of double patenting was. And it didn't in any way override it. It didn't override double patenting because that was not the point or the intent of the statute. The statute was to compensate patentees for delays not of their own doing. Not necessarily to result in multiple not patentably indistinct claims. It didn't deal with that. It just accepted existing law. Well, it did give limitations for the patent term adjustments. And the limitations do address the idea that if there are patently indistinct and therefore terminal disclaimers would have been filed. But there weren't here. Because the examiner did his job and did not give a double patenting rejection. The examiner is presumed to do their job down below. He did interference searches. That's in the record below. You can't rest your appeal on the examiner not doing its job. I mean, you're managing the patents. You're prosecuting them. And you're looking at them as they come out. And surely you knew that the claims in the two patents were the same. Same claims. To be candid, I think the language in Ezra, the verse Ezra, was pretty clear. And so that case law was available. Which language? The language that a statutory extension, judge-made doctrine should not cut short statutory extension. That was a furthermore. A furthermore sentence. That's not the holding of the case. Yeah, but it treated patent term extensions under 156. Adjustment, yeah. Excuse me? No, no. You keep saying extension. You mean adjustment. The Ezra case was patent term extension under 156. It treated that in a very specific manner. We're saying 154 should be treated accordingly. In 156, there was a terminal disclaimer. I mean, in Ezra, there was a terminal disclaimer and you got extension nonetheless. Because that was a statutory extension. Your argument would make sense to me if you were entitled to that adjustment. I mean, you were given the adjustment because of the delay. But at the end of the day, once you get to the expiration of the other patent, then it extinguishes it. I mean, you cannot have two patents for the same invention. Well, if you look at the Ezra case, where there was an actual terminal disclaimer filed, correct? And so they had the same – the extensions nonetheless was viable because it was a statutory extension. We're saying the same thing happens here. Ezra specifically recognizes that double patenting survived and applied. And it only said that once you've taken account of double patenting, that because of delays at the FDA with respect to product approval, a different issue, you get the extension and you can choose which patent. But nonetheless, there was a terminal disclaimer filed, because there was a patent in distinct patents, extension applied, and that was not used for double patenting. I mean, for the double patenting doctrine because the statute cannot – overrides the doctrine. Council, you want to save some time? Why don't we get from the patent office? We'll give you three minutes for rebuttal. Thank you. Ms. Caprahead. Good morning, Your Honors, and may it please the Court. As already recognized by this Court, during this proceeding, Select did not and does not dispute that its challenge claims on appeal are patently indistinct from its prior reference claims, that its challenge claims expired after its reference claims enjoyed their full patent term, and that Select failed to file a terminal disclaimer tying the expiration date and ownership of the challenge claims and reference claims. By not filing that terminal disclaimer before its first set of claims expired, Select has triggered the very concerns that justify unpatentability under ODP. And as this Court has already explained in Beringer, by failing to terminally disclaim a later patent prior to the expiration of an earlier patent, Select enjoyed an unjustified advantage, a purported time extension of the right to exclude from the date of the earlier patent. Counsel Lee, the PTAB relied to an important part on P2B, no patent determined which has been disclaimed may be adjusted beyond the expiration date specified in the disclaimer. That doesn't really apply here, does it? There was no disclaimer in this case. There was no disclaimer in this case, but as this Court has already explained in the Ezra decision, that when under its original expiration date without PTE, for example, in the Ezra case, a patent should have been but was not terminally disclaimed because of ODP, the ODP case law applies. And that is the situation here. Here, because Select's later-issued claims or later-expiring claims should have been but were not terminally disclaimed, ODP applies. And therefore, even though there is no existing terminal disclaimer, once that ODP rejection is made, should Select have wanted to obviate that ODP rejection, they could have filed a terminal disclaimer at that point. And this Court has recognized in multiple cases that a patent holder can file a terminal disclaimer once an ODP rejection or challenge arises, even in litigation. The Board opinion said, we know from P2B what Congress meant. Congress speaks precisely when it means something, and we don't read in meanings beyond specific language, do we? That's correct. Congress there knew what it meant. Congress already had issued Section 253, which talked about disclaimers in the first instance. And therefore, Congress recognized that ODP applies to determining whether or not a patent should be patentable. And because of that, when Congress decided that under Section 154, terminal disclaimer cuts terms, what Congress recognizes is that ODP applies to determining whether or not a statutory term should issue. But whether or not that's true, I mean, the real argument is, they passed the statute, there's no indication that they intended to change double patenting, and the general rule is that it would continue because it's firmly rooted in Supreme Court doctrine going back more than 100 years. That's correct. I mean, because the later-issued claims, or sorry, the later-expiring claims, had term that went beyond the first-issue claims, which they've already enjoyed the full term of those claims. Because that term extended, ODP applies in the situation. And at that point, Select should have filed a terminal disclaimer. But because it did not file a terminal disclaimer, ODP applies, and those claims are unpatentable. Now, they all would have expired at the same time, on October 6, 2017, right? 20 years from the effective filing date. That's correct. But various decisions among these seem to... The 742 patent was invalidated over 369, which has a 45-day extension. But then the 369 is invalidated over the 036 patent, which has no extension. It's a curious set of facts here. Why shouldn't, under your theory, they all have expired when the 036 patent, without a PTA, expired? Well, some of the patents that did have patent term adjustment before the Patent Office, there aren't claims that expired before that that are patently indistinct. And so because those claims issued, and there weren't a prior expiring set of claims that cut the term of that invention, those claims do enjoy the benefit of patent term extension. Or, sorry, patent term adjustment under Section 154. Because there is no ODP problem with those claims. There is no terminal disclaimer that should have been filed that would have cut the term of those claims. But doesn't the double-patenting doctrine invalidate the whole patent, or just claims? So the double-patenting doctrine invalidates claims, but if a terminal disclaimer is filed, then the term of the patent is cut. But there was no terminal disclaimer here. Sorry? There was no terminal disclaimer here. Correct. There was no terminal disclaimer here. Do some claims continue to live here? Some claims do continue to live here. Because they're patently distinct. Because they're patently distinct. That's correct. So the patent isn't invalidated, just claims. Correct. So the only claims that are found to be unpatentable here are the challenge claims. And that is because they're patently indistinct, and Select has already enjoyed the full term of that invention. But Select has a number of additional claims in these patents that continue to have viability, or at least until their six-year term, for them to get damages for those claims. Because I think all of the claims are expired at this point. So double-patenting doesn't invalidate the patent, just claims. Correct. Double-patenting only invalidates the claims. And that's why there is no equity problem here. Because Select has already enjoyed the full term of the inventions that it had in the initial reference claims. And those claims should have been cut by the expiration of the prior patents. But Select still has a number of claims that are patently distinct that can enjoy their full term, including their patent term adjustment period. And that's because OEP essentially is an obviousness inquiry. The non-statutory obviousness type of patenting is essentially an obviousness inquiry. That's correct. And Select here has conceded. There is no patently distinct invention in the challenge claims. So we have no issue of obviousness in this case. We have no issue of obviousness in this case. That's correct. Because they have conceded that issue. And lastly, there is an S&Q that was raised here. As this Court recently clarified in Vivint, a question of patentability is new until it has been considered and decided on the merits. And here the examiner never decided that these particular claims were patently indistinct from prior claims that Select had gotten already. And further, in Patlex, this Court explained that the purpose of the reexamination statute is to correct any errors made by the government. And here the examiner admittedly made an error during original prosecution. And this is the type of... So even though there are here a number of claims that are found to be unpatentable under ODP, as I've already mentioned, Select still has a number of claims that are patently distinct that can't enjoy their full patent term. Now, what about the statement in Novartis, sometimes referred to as Ezra, that the statute prevails over judge-made doctrine? So in Ezra, the Court there was construing both Section 156 and Section 154. And unlike Section 156, the plain language of Section 154 expressly excludes patents in which a terminal disclaimer has been filed, as we've already discussed. And that by expressly referring to terminal disclaimers in Section 154, but not in Section 156, Congress clearly intended for terminal disclaimers to bar patents from receiving the benefits of PTA based on USPTO delay, but not preventing patents from receiving PTE due to FDA regulatory... The answer is that the double-patenting doctrine has always been, in theory, contrary to the statute, which says your patent term shall be 17 years or now 20 from filing. So I don't think that, given that history, that the Court could have meant that the statute necessarily prevails over and wipes out the double-patenting doctrine because the statute was always clear and there was an implied exception that the Supreme Court developed. That's correct. That's correct. Congress is presumed to have been... to have legislated in view of that doctrine, and that is clear based on the other provisions of the Patent Act, that the doctrine continues to live on. If there are no further questions, I yield the rest of my time. Thank you, counsel. Mr. Andre, we'll give you three minutes. I'm going to go back to the Court's language in Novartis v. Ezra. It talks about the interaction between Section 156 and obvious type double-patenting, the very first paragraph. I think it's very instructive. It talks about the fact that the two patents are patently indistinct, and therefore the terminalist number was filed in that case. And two patents, they're patently indistinct. The Court said, even though we conclude the logical extension of a holding in Merck, the obvious type double-patenting does not invalidate a patent-obtained PTE extension in such a scenario. That's what we're saying here. That even if it is, if we find that it is patently indistinct, a statutory extension trumps obvious type double-patenting. That's what the Court found in the Novartis v. Ezra, and that's what the statute says. The statute uses the word shell, and it talks about the limitations of how you do a calculation of the extension. They give a provision for terminal disclaimers, and it is very clear. No patent, the term of which has been disclaimed beyond a specific date, has been disclaimed past tense. It should be adjusted under this section beyond the expiration date specified in the disclaimer. As your Honor has pointed out, there were no disclaimer filed in this case. None requested by the examiner. Select did what it was entitled to do. They got a patent term adjustment. The controlling law in this area, going back from Breckenridge, where an adjustment came into place because it intervened in changing the law. It went from pre-Uruguay to post-Uruguay to the finding of Merck, and now in Ezra. That controlling case law would only give one conclusion here. That is that the fact that the patent term extensions or patent term adjustments were given in this case should not be a basis for an unjust extension and obviously no patenting therefore. If there should be any questions, I'll arrest you for the rest of my time. Thank you, Counsel. Appreciate it, Your Honor. Case is submitted.